Docket No. 08-cv-4306 (JGK)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In the Matter of

MAYNE MILLER,
                                        Debtor

MAYNE MILLER,
                                        Appellant,

            -against-

JEFFREY L. SAPIR, as Chapter 13 Trustee,
                                        Appellee

Submitted by:

MAYNE MILLER
85 Worth Street, 5th Floor
Mail: P.O. Box 8050, G.P.O.
New York, NY 10116
(212) 966-1696
Attorney–Appellant

## PRELIMINARY STATEMENT AND STATEMENT OF FACTS

The Debtor in the underlying Chapter 13 bankruptcy case (the "Case") is a sole practitioner attorney whose largest debts were 1) a private mortgage on a one-family house in Florida used as a rental property and vacant when the Case was filed, 2) rent owed to 79 East Owner, LLC ("79") on his rent-stabilized apartment in Manhattan (the "Apartment"), and 3) rent owed to Irene Cargonja ("Cargonja") on a loft in Long Island City used as his law office (the "Office"). Record on Appeal ("R/A") Item 4, Schedules D and F. Because of difficulty collecting accounts receivable from his clients and former clients. R/A, Item 4, Schedule B ¶ 16.

The Debtor moved for leave to withdraw from the representation of one client who suddenly refused to pay for past services in August, 2007. Denial of several such motions led to filing this Case to obtain a stay of the summary non-payment proceeding commenced by 79 and the holdover proceeding threatened by Cargonja, as well as a foreclosure proceeding threatened by his mortgagee, Richard Bosson ("Bosson"). Even after filing the Case, the Second Circuit denied his motion to withdraw from two related appeals pending in that Court, and the Debtor was obligated to work on a Reply Memorandum to two non-overlapping Appellee's Briefs on multiple issues involving federal procedure, the federal Telecommunications Act, administrative law and antitrust law.

The Debtor submitted two *ex parte* applications for an extension of time to file the documents required by § 521(a) of the new Bankruptcy Code ("Code") and a Chapter 13 Plan (the "Plan"). No action had been taken thereon when the Debtor appeared at a hearing December 13, 2007, on a motion by 79 for relief from the automatic stay to pursue its eviction proceeding and by the Debtor for an extension of time to assume and perform under the lease on his Office. Only the former was granted only to the extent of entering a judgment, with further permission of the Bankruptcy Court required for issuance of a warrant of eviction, but the Judge commented that he had decided to "ignore" the applications for an extension of time to file the required documents.

Thereafter, the standing Chapter 13 Trustee ("Trustee") moved to dismiss the Case for delay in filing the required documents.

Pursuant to the grant of relief from the automatic stay, the Debtor settled 79's eviction proceeding for a judgment of $23,000 without attorneys' fees and an agreement to cooperate if the former owner of the Apartment attempted to collect rent accruing when it was the owner. 79 moved for further relief from the automatic stay to seek issuance of a warrant of eviction. Before the return date of the Trustee's motion to dismiss the Case, the Second Circuit clarified its order denying the Debtor leave to withdraw as counsel to specify that he was not obligated to prepare Reply Briefs on the pending appeals in that Court. That order allowed the Debtor to devote sufficient time to prepare all necessary documents for filing before the return date of the Trustee's motion. All such documents were filed beforehand except for the Plan, which was proposed in two phases depending on whether a tenant was found for the Florida house. A last-minute court appearance on the day the Trustee's motion was heard prevented finalizing the Plan.

At the hearing of the Trustee's motion to dismiss, the Debtor requested an adjournment (R/A, Item # 11, p. 3, ll. 4-5); but the request was not acted upon. The Debtor was not allowed to speak to the merits of the Trustee's motion, but the Trustee's staff attorney recognized that all documents had been filed except the Plan. (*Id.*, p. 6, ll. 4-5).

The Court announced that the motion would be granted solely because of the Plan. The Trustee's attorney offered to submit a revised order cited only the Plan. A revised order was apparently submitted though never filed electronically until the signed order was entered on February 1, 2008. In the meantime, the Debtor completed his filing with the filing of the Plan of January 28. (R/A, Item # 7)

The Debtor moved for reconsideration on the ground that all required documents had been filed and that payments under the plan could not be made because they were not being accepted by the Trustee. That motion was denied without a hearing, and the Debtor filed a timely Notice of Appeal, followed by a Designation of items to be included in the Record and a Statement

of Issues to be Raised on Appeal. After an inordinate and unexplained delay in obtaining the transcript of the January 24, 2008 hearing, the Debtor now files hits Appellant's Brief pursuant to an order of this Court extending the time for 21 days beyond June 30, 2008.

### POINT I

### THERE WAS NO UNREASONABLE DELAY IN THE FILING OF THE DEBTOR'S PAPERS IN THE UNDERLYING CHAPTER 13 BANKRUPTCY CASE.

The rationale for the Trustee's motion to dismiss is stated in the opening paragraph of his proposed order, which finds "unreasonable delay prejudicial to creditors" in the absence of the required documents at the time of the motion. That phrase simply repeats the grounds for dismissal under § 1307(c)(1) of the Code, but not every delay is "unreasonable", nor should every delay be found to be "prejudicial" to creditors. In the Debtor's Case, there existed a unique situation that placed the Debtor in a "Catch-22" situation wherein he would be found to have acted unethically and could even be sued for malpractice if he did not apply himself to the daunting task of preparing a Reply Brief to two separate Appellee's Briefs prepared by two formidable adversaries, the City of New York and Verizon. This was his unmistakable obligation under the terms of the earlier order of the Second Circuit setting a briefing schedule and the later order of that Court denying the Debtor's motion for leave to withdraw. The situation was exacerbated by the failure of the staff of the Second Circuit even to place the Debtor's motion before the Court until more than two months after it was first made and the fact that it was denied because of the late stage of the proceedings when the decision was made—a decision which presumably would have taken a different form if the Court had considered the motion two months earlier, at which time, even if the motion had been denied, the Debtor would have had more time to prepare his Schedules and Plan.

### POINT II

### THERE WAS NO PREJUDICE TO CREDITORS IN THE DELAY IN FILING THE

**DEBTOR'S CHAPTER 13 PLAN.**

Not every delay automatically prejudicial to creditors. Of the three largest creditors in this Case, 79 had its recourse, which it employed, of moving for relief from the automatic stay. Cargonja's attorney was informed by the Court on December 13, 2007, that no motion had been made by her for relief from the automatic stay, and that motion could have been made at any time. The mortgagee Bosson was still adequately protected as a secured creditor by the value of the house even though the tenant at the time defaulted in the payment of rent immediately and had to be evicted a short time later. Thus the dismissal of the Case, if it were to withstand scrutiny, would have to rely on § 1307(c)(3) and (4), not § 1307(c)(1) as stated in the order.

**POINT III**

**ANY DELAY IN FILING THE DEBTOR'S PAPERS
WAS CAUSED BY CONDITIONS
BEYOND HIS CONTROL.**

The record adequately showed (R/A Item # 3 and 12) that the reasons for any delay in filing the Debtor's required papers were caused by conditions beyond his control, primarily the unexpected refusal of his largest client to make any payment whatsoever for past services which had been compensated for at the rate of less than half of the special "bargain" rate that client had been given four years before ($1000 per week for all proceedings).

If the Debtor had been allowed to withdraw from the representation of that client, the required papers could still have been prepared with reasonable promptness, but litigation was progressing in the District Courts of the Southern and Eastern Districts of New York, several different claims actions in the Bankruptcy Court from the Southern District of New York (in a case commenced in 2001 under the old Code) and two related appeals in the Second Circuit. Only the drastic measure of commencing his Chapter 13 Case allowed the Debtor to obtain permission to withdraw from the litigation in the Bankruptcy and District Courts, but even that was not enough to persuade the Second Circuit. Only a clarification order which the Debtor first received on

January 11, 2008, relieved him of the overbearing obligation to prepare Reply Briefs in the pending appeals without compensation. In addition to opposing the Trustee's motion to dismiss (R/A Item # 3), the Debtor did manage to complete all required documents, but the two-stage Plan was not completed until three days after the hearing, but four days before entry of the order dismissing the Case.

Notwithstanding the stringent time requirements for filing the documents required by § 521(a) of the Code, the Code allows the Court to grant additional time to file the documents if it finds "justification" for extending the period for filing. § 521(i)(3). Whether the unique and bizarre situation of the Debtor constitutes such justification is a question of law that is reviewed *de novo* on appeal. Since the lower Court obviously believed that its requirements took precedence over those of the higher Court, the Debtor asks this Court to assign the proper priority between the conflicting demands placed on the Debtor by his unique situation and find justification for extending the time to file the required documents until the dates on which they were actually filed.

### POINT IV

### THE DEBTOR WAS NOT OBLIGATED TO MAKE PAYMENTS UNDER A PLAN UNTIL A PLAN EXISTS.

The Code, in requiring that payments be made by a Chapter 13 debtor, provides in § 1326 that such payments begin in 30 days, but under the new Code, those payments are not necessarily payments required by a Plan. The Order dismissing the Debtor's Case referred only to payments not made pursuant to a Plan. However, § 1326(a)(1) of the Code cites only three types of payments that must be made. Only § 1326(a)(1)(A) refers to payments under a Plan; § 1326(a)(1)(B) refers to payments scheduled in a lease of personal property and § 1326(a)(1)(C) refers to payments to a creditor secured by personal property of the Debtor. Obviously paragraphs (B) and (C) do not apply to the Debtor's Case, and it is simply impossible to make payment in an amount proposed by the Plan before the Plan is proposed. Thus, the only valid ground for any

dismissal of the Debtor's Case on January 24, 2008, was the absence of a proposed Chapter 13 Plan. Since this was the only failure operative at that time, it was reversible error for the Bankruptcy Court not to reconsider its order of dismissal entered after that sole deficiency had been cured.

### POINT V

### THE PREVIOUS ORDER OF JUDGE PECK WAS IMPROPERLY CONSIDERED IN THE GRANTING OF THE TRUSTEE'S MOTION TO DISMISS THE DEBTOR'S CHAPTER 13 CASE BEFORE JUDGE GLENN.

The prior order of Judge Peck refusing to reconsider his oral statement that he had decided to "ignore" the Debtor's valid *ex parte* applications for an extension of time to file the required documents (transcript of hearing of December 13, 2007, p. 6, l. 4) noted that "[n]othing in this decision is intended to influence the outcome of the motion to dismiss". (R/A Item # 2, p. 5). Yet the decision of Judge Glenn specifically notes that he had considered the Order of Judge Peck issued on January 4, 2008, without giving any indication that such consideration was independent of his decision to dismiss the Debtor's case for the sole reason of the absence of a proposed Plan of January 24. It is disingenuous at best to assert that the decision to dismiss the Case because of lateness of filing documents for which permission to extend the time had been belatedly (or secretively) denied by a previous judge was not influenced by such a prior determination.

When a prior order is expressly made without prejudice to future orders, and the ordering judge abjures any desire to influence future proceedings, it is an abuse of discretion to ascribe a greater scope to such prior order than the issuing judge elected to give it. The Debtor has a right to have his objection to the Trustee's motion to dismiss considered *de novo* and adjudged on the basis of the documents that were filed before the order of dismissal was entered.

POINT VI

**THE APPEAL OF JUDGE GLENN'S ORDER
DISMISSING THE DEBTOR'S CHAPTER 13 CASE
SHOULD NOT BE CONSIDERED BEFORE THE
DETERMINATION OF THE
APPEAL OF JUDGE PECK'S ORDER REFUSING
TO CONSIDER THE DEBTOR'S
APPLICATIONS FOR AN EXTENSION OF TIME
TO FILE REQUIRED PAPERS.**

It is precisely because of the interrelationship of issues between the Order of Judge Peck entered January 4, 2008, which was the first written order ever entered denying the Debtor's requests for an extension of time in which to file the required documents, and the Order dismissing the Case based solely on the untimely filing of those very documents that any consideration of the appeal of the order of dismissal should await the consideration of the appeal of the order denying reconsideration of Judge Peck's previously concealed determination to "ignore" the Debtor's November applications for an appropriate extension of time to file the documents that would allow him also to fulfill his ethical obligations with respect to the Second Circuit appeals and also his ethical obligations to operate his business as debtor-in-possession in a profitable manner for the benefit of all his creditors.

POINT VII

**DOCUMENTS FILED BEFORE ENTRY OF THE
ORDER DISMISSING THE DEBTOR'S
CHAPTER 13 BANKRUPTCY CASE SHOULD BE
CONSIDERED ON A MOTION TO
RECONSIDER SAID DISMISSAL.**

There is no dispute that the Trustee's motion to dismiss his Case was based on the absence of documents that were filed before the Court considered the motion. There is also no dispute that the only missing document (the Plan) was filed four days before the entry of the order dismissing the Case. On reconsideration, the Court admitted that it took the time to listen to the recording of the hearing before signing the order of dismissal to ascertain whether he had actually

ordered that an order be settled as opposed to submitted. (The transcript indicates that the word "settle" was not used.)

There is no precedent for entering an order blindly ignoring relevant documents that the Court knows exist and could affect the outcome of the motion being decided; and the matter should be remanded to the Bankruptcy Court for a consideration of the motion on the basis of all documents that were available at the time of the entry of the order.

## POINT VIII

### THE DEBTOR'S APPLICATION FOR AN ADJOURNMENT OF THE TRUSTEE'S MOTION WAS NOT CONSIDERED BY THE COURT AND SHOULD HAVE BEEN.

The transcript of the January 24, 2008 hearing clearly shows that the Debtor spoke only to his application for an adjournment. (R/A Item # 11, p. 2 "adjournment" and p.5 "That's my application"). The court nowhere indicated any decision on the Debtor's application for an adjournment and simply decided to dismiss the Case for whatever documents were missing (at that point, only the Plan). A hearing in the Bankruptcy Court need not be a full evidentiary hearing but must at least conform to the elements of due process, including notice and an opportunity to be heard. The Judge's request for anything further did not refer to the merits of the Trustee's motion when he had not yet ruled on the Debtor's application for an adjournment Therefore the hearing did not conform to the minimum requirements of due process and the matter should be remanded for a proper hearing.

## POINT IX

### THE DEBTOR WAS NOT ALLOWED TO PARTICIPATE IN THE HEARING OF THE MERITS OF THE TRUSTEE'S MOTION AFTER HIS APPLICATION FOR AN ADJOURNMENT WAS EFFECTIVELY DENIED.

The transcript of the hearing on January 24, 2008 clearly shows that the Judge cut off all discussion after the presentation of the Trustee's attorney (R/A Item # 11, p. 8). After having stated that he would address 79's motion at a later date he proceeded to dismiss the Debtor's Case, precluding the calendaring of any motion at a later date and also precluding the Debtor from testifying on the merits of the Trustee's motion (which he clearly had not addressed in his application for an adjournment and also precluding the Debtor from any opportunity to reply to the presentation of the Trustee's attorney. On these grounds also, the matter should be remanded for a hearing complying with the minimum requirements of due process.

### POINT X

**THE DEBTOR SHOULD HAVE BEEN PERMITTED TO SUBMIT A COUNTER-ORDER UNDER CIRCUMSTANCES WHERE THE COURT DECLINED TO MAKE MOST OF THE FINDINGS REQUESTED BY THE TRUSTEE IN HIS MOTION TO DISMISS THE DEBTOR'S CHAPTER 13 CASE.**

Since the Order that the Trustee finally submitted to the Court was so substantially different from the one proposed with his original motion, the DEBtor should have had the opportunity to examine it in detail (which he was not allowed to do because it was not filed electronically when it was submitted, according to the procedures in the Bankruptcy Court which supposedly require electronic filing of all documents but except *ex parte* applications and submissions). had he had the opportunity to do so, he would have noted that the final form of the Order still mentioned § 1307(c)(1), which, as noted above, was not really applicable to the conditions that existed on January 24 or on February 1, when the order was entered.

### POINT XI

**THE DEBTOR DID NOT HAVE "AMPLE" OPPORTUNITY TO CORRECT THE SHORTCOMINGS IDENTIFIED IN THE TRUSTEE'S MOTION TO DISMISS HIS CHAPTER 13 CASE.**

One of the parenthetical comments in Judge Glenn's order denying reconsideration was that the Debtor had "ample" opportunity to correct the "shortcomings" that led to the dismissal of his Case. The use of this term indicates that the Judge did not afford sufficient weight to the obligation of preparing a competent appellate brief to be presented to the Second Circuit. It probably also indicates that the Court did not take into account the physical limitations of the Debtor or else simply expected him to operate at a superhuman level of activity seven days a week as a matter of course. During the period of his Case that has been dismissed, the Debtor did not take any vacation and did indeed work seven days a week, although much of that work was involved in trying to search for new paying clients and arranging the eventual relocation of his office, searching for a new tenant for his Florida house, and trying to collect other accounts receivable.

Nevertheless, the lower Court never understood the time-consuming nature of the work in preparing an appellate brief on a wide variety of issues some of which were not a regular part of his practice except for the cases the underlay the pending appeals before the Second Circuit. To say that the Debtor had "ample" opportunity to cure the deficiencies in his papers is to ignore the practical realities of the Debtor's situation and to ignore the complexity and time-consuming nature of the task of searching through hundreds of cartons of documents just to find the few papers that could quantify the figures needed to prepare honest and accurate Schedules and also weigh the possibilities of future income which constantly varies in amount even though the base of a regular income is always present in order to qualify the Debtor for protection under Chapter 13. Regular income does not mean that a debtor's entire income must be regular in amount, and in the case of this Debtor it certainly is not.

A bankruptcy judge is supposed to take into consideration the personal situation of any individual debtor, and it is the responsibility also of the Trustee to assist a Chapter 13 debtor in confirming a Plan, not to place artificial barriers in the way of such confirmation or to force the unusual debtor into a Procrustean bed of rigidly following the arbitrary time frames of the

Bankruptcy Code and Rules when they are expressly stated not to be jurisdictional and subject to modification under reasonable circumstances and conditions.

The present case is a good example of whether the Bankruptcy Code is a living document that can adjust itself to satisfy the needs and legitimate purposes of the unusual debtor or whether it is a straightjacket that spews out those who do not fit a preconceived mold.

## CONCLUSION

**THE TRUSTEE'S MOTION TO DISMISS SOLELY FOR THE ABSENCE OF A CHAPTER 13 PLAN SHOULD BE RECONSIDERED IN VIEW OF THE FILING OF THE PLAN BEFORE THE ORDER OF DISMISSAL WAS ENTERED, AND THE DEBTOR'S CHAPTER 13 CASE UNDER DOCKET NO. 07-13481 SHOULD BE REMANDED TO THE BANKRUPTCY COURT FOR FURTHER CONSIDERATION AND AN OPPORTUNITY TO AMEND THE DEBTOR'S PLAN AND SCHEDULES TO REFLECT RECENT PAYMENTS TO CREDITORS, WITH THE AUTOMATIC STAY RESTORED WITHOUT PREJUDICE.**

Respectfully submitted,

Dated: New York, New York
       July 21, 2008

/s/ Mayne Miller
MAYNE MILLER (MM-4106)
85 Worth Street, 5th Floor
Mail: P.O. Box 8050, G.P.O.
New York, NY 10116
(212) 966-1696
Attorney–Appellant

Case 1:08-cv-04306-JGK    Document 7    Filed 07/21/2008    Page 13 of 13