Docket No. 08-cv-4306 (JGK)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In the Matter of

MAYNE MILLER,

Debtor

MAYNE MILLER,

Appellant,

-against-

JEFFREY L. SAPIR, as Chapter 13 Trustee,

Appellee

APPELLANT'S REPLY MEMORANDUM

Submitted by:

MAYNE MILLER
85 Worth Street, 5th Floor
Mail: P.O. Box 8050, G.P.O.
New York, NY 10116
(212) 966-1696
Attorney–Appellant

**TABLE OF CONTENTS**

| <u>Item</u> | <u>Point</u> | <u>Page</u> |
|---|---|---|
| Point I | The papers of the Appellee and the Intervenor misstate the facts, the controlling law, the standard of review, and the procedural history of the case. | 1 |
| Point II | The stay created by the Debtor's second bankruptcy case is substantially different from the stay to which he was entitled in his first case, and the Intervenor would not be prejudiced by the reversal of the orders under appeal. | 13 |
| Conclusion | | 17 |

**POINT I**

**THE PAPERS OF THE APPELLEE AND THE
INTERVENOR MISSTATE THE FACTS,
THE CONTROLLING LAW, THE STANDARD OF
REVIEW, AND THE PROCEDURAL
HISTORY OF THE CASE.**

The papers of the Appellee (Jeffrey L. Sapir, Standing Chapter 13 Trustee for the Southern District) and the Intervenor (79 East Owner, LLC, the landlord of the Debtor's rent-stabilized apartment and a creditor of the Debtor) repeatedly misstate and distort crucial facts, circumstances, and procedural events in the within appeal.

They also propose an incorrect standard of review. Fed.R.Bankr.P. 8013 does agree with the general rule of federal appellate practice that the findings of fact of the trial court should not be set aside unless they are found on appeal to be "clearly erroneous". The added direction that due regard should be taken for the trial court's ability to judge the credibility of witnesses, however, is of no import in the within appeal, in which there was no trial, no witnesses were ever sworn, and the Debtor did no more at the "hearing" than ask for an adjournment. This confirmation of one element of the standards of review in federal appeals does nothing to negate the other standards of review, including that conclusions of law are reviewed *de novo*. *See, In re Enron Corp.*, 419 F.3d 115, 124 (2nd Cir. 2005); *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 333 (S.D.N.Y. 2008). There were no significant findings of fact in the Bankruptcy Court orders appealed from, and none are alleged in the opposing papers except the allegation that the order of dismissal was dated January 24, 2008, which is clearly erroneous because it could not have been signed on the date of the hearing since the Trustee's counsel had to submit a revised order at a later date and in any event an order is not

effective until it is entered, in this case on February 1, 2008,[1] four days after the Debtor's Plan was filed. *See, Beatty v. Traub*, 162 B.R. 853, 857-8 (B.A.P., 9th Cir. 1994).

Thus, the allegations in the Preliminary Statement in the Appellee's Brief that the Debtor failed to file a Plan and does not dispute that "fact" or both false. The allegation in the Statement of Facts that Judge Peck denied the Debtor's application for an extension of time to file the required papers on December 13 is likewise incorrect. Rather, Judge Peck admitted that he had ignored the application. The Bankruptcy Judge had the discretion to grant or deny the Debtor's duly-filed application at any time, but he did not have the discretion to ignore it. Inasmuch as the Debtor had every right to believe that his application was still being considered even on December 13, 2007, he cannot be faulted for not having rushed to file inadequate or possibly inaccurate papers by December 10. The Appellee admits that the sole reason for the dismissal was failure to file a Chapter 13 Plan (Brief, top of p. 3). Contrary to the Appellee's inference, the Debtor was not required to make a payment any earlier. The requirement for payments under a Plan are set forth in Title 11 U.S.C. (hereinafter, the "Code"), §1326(a). Payments must be made as proposed by the Plan, which obviously cannot be done until the Plan is proposed, or as scheduled in a lease for, or a secured interest in, personal property. No such personal property appears in the Debtor's schedules. Furthermore, payment of the rent for the Debtor's apartment for the month following the filing of his petition was paid directly to the landlord.

The Appellee's Brief next argues for Judge Glenn's statement that the Debtor "had ample opportunity to correct the shortcomings [*sic*]" that led to dismissal of the case. The only shortcoming was the late filing of the Plan, and the Bankruptcy Court apparently did not even

---

[1] Under the mandatory electronic filing system now practiced in the Bankruptcy Court for the Southern District of New York, copies of an Order (apparently even certified copies) to not bear the entry date; and reference to the Docket Sheet is required to ascertain the effective date of any Order. In the case of the order of dismissal, the "date" of January 24 was the date of the hearing; it could not even have been the date on which the Order was signed, because the draft of the order was not prepared by the Trustee's counsel until after the hearing was closed late in the afternoon of January 24 and the office of the Trustee is located outside of White Plains, about 30 miles from the courthouse.

consider that the Debtor had other obligations that he felt superseded the non-jurisdictional time limitation on filing a Plan. These included the obligation to obey a scheduling order from the Second Circuit in the consolidated appeal which he is still obligated to argue without pay because the Circuit has refused to allow him to withdraw as attorney of record and did not allow him to abstain from continuing to write the appellant's reply brief only in its order of clarification which was received on January 11, 2008. They also included the obligation to operate his business as Debtor-in-Possession as profitably as possible for the benefit of all his creditors, as well as the obligation to search for new clients who could pay sufficient fees to enable him to meet the overhead of his office.

Appellee cannot argue the propriety of the conclusion in Judge Berman's initial order denying a stay pending appeal because there was no support in his order for the allegation that the Debtor was "unlikely to succeed on the merits on an appeal". It appears that the fact that the sole deficiency on which the order of dismissal was based was cured before the order was entered was not addressed by Judge Berman. The phrase "[j]ust after the denial of the stay" on page 3 of the Appellee's Brief is also not accurate. The timing of the filing of the Debtor's second bankruptcy case was determined by the progress of the Intervenor in seeking a warrant and notice of eviction. Its first incomplete application was rejected in February, 2008; its second application, still incomplete, was rejected in March, 2008. It appeared that the third application would also be rejected, but the necessary paper appeared in the file of the Civil Court at the last moment, so the warrant was issued on April 3, 2008.

The Marshal's Notice of Eviction was never properly served, but since the Marshal scheduled an eviction anyway[2], the second bankruptcy petition was filed on April 18 to forestall the possibility of an illegal eviction, which could have extinguished the Debtor's statutory entitlements under the New York City Rent Stabilization Law ("RSL"), with the remaining

---

[2] Notice of any scheduled eviction must be filed with the New York City Department of Investigation 24 hours beforehand, so that the Debtor discovered the scheduling date that way.)

-3-

possibility of monetary damages providing only inadequate compensation for such a drastic loss. The motion for reconsideration of the denial of the stay did raise issues overlooked in the first order of denial, but the denial of reconsideration did not address those issues.

The argument that the Debtor had "ample time" to file all required documents is belied by the factual complexities of the case. For example, Schedule B, line 16, requires the Debtor, who is "in business" within the meaning of the instructions to the required Statement of Financial Affairs, to itemize each account receivable which he is obligated to attempt to collect as a part of his responsibilities as a Debtor-in-Possession. The Debtor had several accounts involving litigation for different clients stretching back up to six years, sometimes involving daily conferences, research, preparation of documents, and frequent court appearances. It required over a day to reach an estimate for just one of those items, since the relevant notations were scattered through different files, some of which were (and still are) in packing cartons piled up in his office and even in his apartment. In years past, a debtor might be expected simply to make a shot-in-the-dark estimate of such figures for the purpose of completing the schedules and giving the Court a rough idea of the debtor's obligations for purposes of estimating the feasibility of a plan.

However the new, euphemistically-entitled the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") has changed the philosophical direction of the Bankruptcy Code so radically that any such former presumptions should be now considered obsolete. Under BAPCPA, the signature of an attorney on a petition is a certification that the attorney has no knowledge after an inquiry appropriate under the circumstances that the information on the schedules is incorrect. Thus, the decision of Judge Glenn that the 13 days between the Debtor's learning that he was relieved of the obligation of preparing a reply brief for the Second Circuit and the date of the hearing on the Trustee's motion to dismiss was "ample time" to ascertain accurate figures for all the items required in the Debtor's Schedules placed the debtor in the position of either risking dismissal of his case by taking the time to prepare reasonably accurate schedules or risking sanctions (including dismissal) for filing a false certification. The issue thus becomes a

-4-

question of law to which the *de novo* standard applies. The citation of *In re Love*, 957 F.2d 1350 (7th Cir. 1992) would have been more appropriate if it noted the applicability of the "totality of circumstances" test to any question of dismissal of a bankruptcy case that was proper on its face. Under the totality of circumstances test, the Bankruptcy Court was required to consider the complexity of detail in this Debtor's filings, the inaccessibility of required data, and his overriding obligation to obey outstanding orders of the Circuit Court. All three failures constitute errors in the dismissal of the Debtor's Chapter 13 case. It is disingenuous at best to allege that the Debtor had from November 1, 2007 to January 24, 2008 to file a plan. No plan can conscientiously be filed until the Schedules on which it is based are complete.

The Appellant has not failed to "acknowledge" the clearly erroneous standard (Appellee's Brief, p. 4) but rather asserts that it does not apply to the controlling questions of law. It is true that there is no denying the fact that the Chapter 13 plan was not timely filed. There is also no denying the fact that a timely request was made for an extension of time. There is also no denying the fact that the Debtor's request was ignored. There is also no denying the fact that the Debtor's Plan was filed on January 28, 2008, four days before the order dismissing his Chapter 13 case was entered. Submission of a Plan is not an excuse; it is the fulfillment of the responsibility.

Contrary to the allegations in Appellee's Brief, p. 5, Appellant's Memorandum of Law does cite the necessary provisions of the law, whose interpretation is clear. An attorney's ethical obligations to a higher court, together with the need to operate his business profitably as a Debtor-in-Possession and avoid malpractice litigation, do not constitute a "lame" excuse for a minimal delay in the fulfillment of other obligations. If the Debtor were being paid for his other obligatory work it would have made it possible to hire others to perform his more routine obligations. Entering Chapter 13 was the Debtor's choice, but given the alternatives of losing his statutory entitlements under the RSL and losing his Florida house to foreclosure, it is not a choice he should be criticized for making.

Chapter 13 is not as voluntary as the Appellee's Brief would lead the Court to believe. The unexplained citation of a "bonanza" discharge is an apparent reference to a single 27-year-old case (*In re Scher*, 12 B.R. 258 [Bankr., S.D.N.Y. 1981]), which recognized that §1328(a) of the Code does not require the inclusion of dischargeable unsecured debts in a confirmable Chapter 13 plan, including student loans, which constituted the bulk of the debts of Mr. Scher.[3] The inclusion of this reference in any argument concerning the present Debtor's Plan is so irrelevant and pejorative as to be irresponsible. The Debtor is proposing a 100% Plan in which all creditors, secured and unsecured will be fully satisfied and could consider no other type. (In any event, the changes in the BAPCPA, including §523(a)(8)(B), render such attempts to avoid payment of student loans obsolete.) That the Debtor had shown cause for extending the time in which to file his Plan is the subject of the companion appeal under Docket No. 08-CV-4305. *Dudley v. Powers*, 273 B.R. 197 (B.A.P., 8th Cir. 2002) and *Simmons v. Cosby*, 256 B.R. 578 (D. Md. 2001) (incorrectly cited in the Appellee's Brief) are also inapposite. The former involved an appeal that was moot because a foreclosure sale had already taken place; the latter involved a debtor who had made no effort to comply with any of the filing requirements for a Chapter 13 debtor even before the BAPCPA expanded those requirements. Thus the entire Appellee's Brief does not supply grounds for denying the within appeal.

The Intervenor's Brief (also entitled "Appellee's Brief") is lengthier but is similarly founded on mischaracterizations and inapposite arguments. Its additional argument that the within appeal is moot is dispensed with in Point II, *infra*. Its Preliminary Statement adds the argument that since the Debtor's original request for an extension of time suggested a deadline of December 10, 2007, that missing that deadline constitutes grounds to dismiss his Chapter 13 case. It is true that the original request for an extension of time did mention December 10. At the time the request was made, that appeared to be a reasonable request, because the Debtor anticipated that his motion

---

[3] This provision also allows the so-called "Chapter 20" case, which preserves a debtor's title to a property with a secured encumbrance; *see, Johnson v. Home State Bank*, 501 U.S. 78 (1991).

-6-

before the Second Circuit for leave to withdraw from the representation of an appellant in two related appeals then pending in that Court would be granted after it was shown that he was forced into bankruptcy solely by his obligations to continue to represent a client who had intentionally stopped all payments, including on substantial accumulated bills, over two months before. It as also anticipated that the Bankruptcy Court would issue an order setting a specific deadline that the debtor could then use as a criterion for prioritizing his time. When neither of those two events occurred, the Debtor was ethically obligated to continue working on the Second Circuit appeal.

      Intervenor's Brief continually characterizes the time frame for filing a Chapter 13 Plan as a statutory requirement and claims that the debtor "violated" the law. However, non-jurisdictional time requirements, such as those in the Code for filing what can be voluminous papers, are regularly subject to multiple extensions; and the general practice is to grant at least one as a matter of course. If Judge Peck, for some reason, decided not to grant this Debtor the privilege of receiving the conventional extension, he still had the obligation, as a sitting judge, to convey his position to the Debtor. An essential element of this appeal is that the Bankruptcy Court had the discretion to deny any application for an extension of time, in which case that decision could be appealed and reviewed under the "abuse of discretion" standard. However, it did not have the discretion not to act at all, which decision is being appealed as a question of law subject to the *de novo* standard of review. Thus, the Bankruptcy Court did misapply controlling principles of law and also misapprehended material facts, *viz.*, that the Debtor's Chapter 13 Plan was filed before the Order dismissing his Chapter 13 case for failure to file a Plan. All three issues on appeal alleged in the Intervenor's Brief are inappropriately stated and irrelevant to this appeal.

      The reference to the Order of Judge Peck dated January 4, 2008, in the Intervenor's Brief ignores the fact that one reason why the Debtor did not complete all required documents by the date he originally suggested (December 10) was that events occurring subsequent to the time he made his original request (especially the denial of his motion to the Second Circuit) had added even more burdens to his time. It also ignored the fact that one factor in Judge Peck's decision (the

supposedly time-consuming papers the Debtor submitted in support of his application) were more time-consuming than preparing the Schedules would have been—a conclusion that is monumentally disparate with the actual facts of the condition of the Debtor's office after repeated forced relocations.[4]

It is true that Judge Berman denied Appellant's motion for a stay pending appeal, finding insufficient likelihood of success in the appeal. However, the excerpt from Judge Peck's decision quoted by Judge Berman, "[h]aving to work hard to represent a client does not trump the duty to fulfill the requirements of the Bankruptcy Code", presents a question of law with which the Appellant is in profound disagreement, particularly when the obligation to represent the client includes obeying an order of the Second Circuit.

Intervenor's Statement of Facts then continues with its mischaracterizations. Appellant has some experience in Bankruptcy Court practice, but until the present case, all of that experience was in cases commenced under the pre-BAPCPA Code. So many aspects of the practice have changed, such experience can be more dangerous than advantageous. Intervenor then repeats its allegation made many times before, that the Debtor "has no equity in the premises". The rejoinder remains the same. That phrase, from §362(d)(2)(A) of the Code, is meaningless if it is considered to refer to an ownership interest but is inaccurate as referring to the entitlements that flow from continued possession, since under New York law (N.Y.R.P.A.P.L. § 749[3]) any warrant may be vacated for good cause shown.

Perhaps less apparent is the fact that the allegation about the Creditor-Landlord being denied the "use" of its premises is also inaccurate. The Intervenor is a subsidiary of a developer that is acting under the normal rapacious standards of Upper-East-Side Manhattan developers, using all available tactics to rid sound housing of its rent-regulated residential tenants

---

[4] The debtor invented his own keyboard layout many years ago and uses it regularly to prepare documents at a speed substantially faster than most secretaries. The hour or two spent in the preparation of the declarations objected to by Judge Peck must be compared to the 20-30 hours spent in just locating documents to arrive at an accurate figure for some individual lines in the debtor's Schedules.

for the purpose of harassing the remaining tenants, demolishing the buildings, and using dangerous construction techniques to build more "luxury" housing that itself will deteriorate in another generation. There are a total of 6 apartments in the Debtor's building. Two have been vacant for over a year, and the owner has been quite content to leave them vacant, cannibalizing their fixtures for repairs to the other apartments that it cannot avoid having to make. Since the building is worth millions of dollars more as a vacant building (or vacant land on a development site), it is the landlord, not the tenant, who is seeking a "bonanza" from the outcome of this case. The allegations regarding the monetary amounts of the judgment (by stipulation, subject to further order of the Bankruptcy Court), amount alleged owed, and the legal fees (which may be collected in a similar amount by the tenant upon the victorious completion of the proceedings in landlord–tenant court pursuant to N.Y. Real Prop. L. §234) were rendered completely incorrect by the Order of the Housing Part of the New York City Civil Court rendered the very day the undated Intervenor's Brief was filed. All amounts found to be owing have been paid, and the warrant of eviction is deemed vacated. (*See*, Order dated August 5, 2008, entered on or about August 13, 2008, Civ. Ct., N.Y. Co., Index No. L&T 79271/07).

To begin its unidentified Argument section, Intervenor's Brief repeats the inappropriate "clearly erroneous" standard, but does identify the standard for a motion for reconsideration: overlooking controlling principles of law or misapprehending material facts. The cases cited, however, do not help its argument. In *Fox v. Stein (In re Perry H. Koplik & Sons, Inc.)*, 2007 WL 3078921 (Bkrtcy. S.D.N.Y., Oct. 18, 2007), Judge Gerber granted reargument because he was given inaccurate information on the original motion. This parallels the case at bar, where the "information" that the debtor had not filed a Chapter 13 Plan was corrected four days before the Order dismissing his case was entered. In *In re Asia Global Crossing, Ltd.*, 332 B.R. 520 (Bankr., S.D.N.Y. 2005), the court added the alternative criterion to a possible grant of reargument: preventing manifest injustice. It did not grant reargument, but the issues in the case concerned an anticipatory repudiation and had no conceivable applicability to the case at bar. *In re Adelphia*

*Business Solutions, Inc.*, 2002 Bankr. LEXIS 1604 (Bankr., S.D.N.Y. Oct. 15, 2002) denied a "second bite of the apple" without giving any indication of what the attempted second bite was. *In re Miller*, 2008 WL 110907 (Bankr. S.D.N.Y. Jan. 4, 2008) is the very decision that the Debtor is appealing in the companion appeal herein and can hardly be used as an authority for denying what is essentially its own appeal.

The case of *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2nd Cir. 1995) does state the operative principle that reargument should not be granted absent a showing of a controlling precedent or data that would likely change the Court's decision. However, the filing of the Debtor's Plan, when the dismissal of his case was based solely on the failure to file that very Plan, is certainly a datum that should change the Court's decision. Nor should the Debtor's motion for reconsideration be subject to rejection under the principle that new evidence is not to be considered, as stated in *In re Spiegel, Inc.*, 2007 WL 1080190 (Bankr., S.D.N.Y. April 4, 2007). The *Spiegel* decision was made on a motion under Fed.R.Civ.P. 60(b), not Rule 59(a) as was the Debtor's motion the denial of which was entered on February 28, 2008.

The Debtor agrees that the burden of showing manifest injustice or an error of law is on the appellant, as stated in *In re WorldCom, Inc.*, 2007 Bankr. LEXIS 3933 (Bankr., S.D.N.Y. Nov. 27, 2007). However, Intervenor's unsupported allegation that the Appellant "failed to meet his burden" does not make it true. The fact of the matter, as shown repeatedly by the Appellant, is that he had no opportunity until learning of the clarification of the Order of the Second Circuit on January 11, 2008. He then prepared his Chapter 13 Plan and would have had it ready for the hearing on January 24, 2008, were it not for the fact that he had an obligation to appear in the New York City Civil Court that morning to finalize a stipulation that was entered into the day before but required an additional appearance because his client did not have the last rent installment in certified funds that he was supposed to have on the earlier date. The Bankruptcy Court denied the Debtor's application for a brief adjournment, denied him any opportunity to argue the merits of the Trustee's motion, and refused to consider that the Plan had been filed before the date on which the

-10-

Order of dismissal was entered. All such actions are an abuse of discretion and should be reversed on that ground.

Intervenor's Brief then repeats its argument that a failure to meet a non-jurisdictional deadline means the Debtor "violated the law". The Debtor does not seek to "pick and choose" what portions of the law to violate. Those time limits that are jurisdictional have been followed. For those that are not, applications to extend the time were made when required. The fact that failure to file a plan is a ground for dismissal is irrelevant since the Plan was filed. There was been no lack of good faith, inexcusable procrastination, or dilatory conduct. All the work involving the preparation of papers in this case, night and day seven days a week, was done in the Debtor's apartment, in which the individual heating unit had ceased functioning in the first week in December, 2007; and the landlord had done nothing to repair or replace it at any time thereafter. The Debtor continued to risk his health by working under those adverse conditions because of his high regard for his professional obligations and the procedural requirements of the new Bankruptcy Code, however unjustifiably onerous those new requirements may be. Criticism for delay should not be heard from the very entity that contributed to it.

Reversing the February 1 and February 28, 2008 orders of the Court will not frustrate the efficient administration of the Court, which encounters reversals and amendments of orders all the time. To insinuate that the deliberations of the Second Circuit were "within the control of appellant" in an insult to the federal court system. In view of existing precedent allowing an attorney to withdraw from non-paying representation of a commercial client (*see, Life Dome v. Church Loans & Inv. Trust*, 499 F.Supp.2d 399, 401-2, n. 2 [S.D.N.Y. 2007]), it certainly was an "unforeseeable human reason" that made it impossible to comply with the obligation to prepare a Plan based on accurate Schedules before being relieved of the bulk of the obligation in the Second Circuit on January 11, 2008.

Contrary to the vituperative allegations at the bottom of p. 10 of the Intervenor's Brief, the result of the State Court proceedings is that there were no "vexatious" tactics sufficient

to persuade the Court not to exercise its discretion to vacate the warrant of eviction that was itself issued under suspicious circumstances, after two previous attempts had been rejected for failure of perfectly obvious documentary requirements. The comment of Judge Peck regarding strategic purposes was a response to a discussion before Judge Peck in another case where he opined that the unusual facts of that case had not been anticipated by the drafters of the new legislation regarding the curing of a tenant's default in a situation where a judgment of possession had already been entered. It was not intended to be critical of this Debtor's approach but rather a recognition that the Debtor's approach was justified in view of the drastic changes in the law enacted in the course of the BAPCPA. The interests that the Debtor was protecting are precisely the sort of interests that the Bankruptcy Code was enacted to protect. The proposed Plan was an honest and accurate attempt to organize finances and pay all debts in full. It was also used to protect the Debtor against the sword wielded by this Creditor-Landlord in the form of the summary proceeding statute of the State of New York (N.Y.R.P.A.P.L. Article 7).

Under no circumstances is Appellant attempt to "violate" the law, much less to do so with impunity. Appellant is attempting to utilize the law to effectuate a satisfactory 100% reorganization Plan that will protect the valid interests of all his creditors and prevent this particular creditor from receiving an undeserved windfall in the form of another vacant apartment to add to its roster of warehoused space it is using for the eventual harassment of an ever-dwindling number of tenants who remain in the way of its expected bonanza of another high-rise development.

The phrase "[a]ll appellant had to do to continue the case was to file the bankruptcy plan" reveals an abysmal ignorance of how difficult it can be to file a confirmable Chapter 13 plan, fulfilling all the requirements of §1322. One law firm has advertised that during the entire year of 2007, in the Eastern District of New York, not a single pro se Chapter 13 debtor was able to confirm a plan. My own research in this District reveals a similar pattern, cases being dismissed or occasionally converted to Chapter 7. The BAPCPA was placed nearly insurmountable obstacles

-12-

in the way of confirming Chapter 13 plans, and it is irresponsible for the Intervenor's Brief to suggest that the Debtor should have additionally made himself liable for sanctions for improper certification by hurriedly filing a jerry-built Plan which would make fraudulent representations and could not be confirmed anyway.

### POINT II

**THE STAY CREATED BY THE DEBTOR'S
SECOND BANKRUPTCY CASE IS
SUBSTANTIALLY DIFFERENT FROM THE STAY
TO WHICH HE WAS ENTITLED IN HIS
FIRST CASE, AND THE INTERVENOR WOULD
NOT BE PREJUDICED BY THE REVERSAL
OF THE ORDERS UNDER APPEAL.**

Intervenor's Brief also argues that Appellant's present appeal is moot because he has obtained a new stay in connection with the filing of his new bankruptcy case. This argument is untenable under the facts of what has occurred in the new case and also under the seismographic alterations in the Code perpetrated by the BAPCPA. Neither version of the Code contemplates that the obtaining of a possessory judgment by a landlord in a (residential) non-payment case is a two-step process, the way it is in New York, where a judge can enter a possessory judgment at the trial of the non-payment case but the judgment itself is not the instrument that evicts the tenant. The judgment merely determines the rights of the parties. N.Y.R.P.A.P.L. § 747(1). Rather, the warrant of eviction is issued by the Clerk (N.Y.R.P.A.P.L. § 749), allowing the monetary portion of the judgment to be satisfied first and preventing the warrant from even being issued.

Intervenor argues that since the warrant of eviction did issue before the Debtor filed his new bankruptcy case, the landlord-tenant relationship has been permanently severed, and the possessory judgment cannot be cured. Before the passage of the BAPCPA, a landlord did have to move in the Bankruptcy Court for relief from the automatic stay which was imposed by a tenant's bankruptcy filing at any time before eviction, and if the warrant had not yet been issued, a separate application to issue the warrant had to be made. Whether the warrant was issued or not (and

whether the tenant was evicted or not), the monetary judgment remained valid and could be either discharged under Chapter 7 or paid out over time, possibly at a reduced percentage rate, under Chapter 13. Utilizing these techniques, a tenant could often remain in an apartment for many months; and under Chapter 7 he would so remain without paying any rent at all. This was the abuse that the residential-judgment portions of the BAPCPA were designed to correct. The correction was to prevent the automatic stay of §362(a) of the Code from operating at all against the landlord of a debtor's residence (*see* §362[b][22] of the Code) <u>unless</u> the debtor fulfilled the filing and payment requirements of §362(l).

The §362(l) requirements are also a two-step process. First, the debtor must file a statement (at the same time that the petition is filed) that there is an outstanding possessory judgment and it can be cured. Simultaneously, he must pay to the clerk all rent that would accrue on the residence within the following 30 days.[5] The clerk immediately notifies the landlord, who has 10 days to object to the debtor's certification. *See*, General Order No. M-311 (later slightly modified), which provides that if the landlord does not so object, any right to object in the future to that certification is waived.[6] In the second step of the process, within 30 days, the tenant must pay the <u>entire</u> amount of the possessory judgment directly to the landlord (who has already agreed to receive it) and file a certification with the clerk that the full amount of the judgment has been so paid. Again the landlord can object, but if there has been no objection to the first certification, it would appear that the only possible objection would be that the proffered amount does not fully satisfy the judgment.

---

[5] The obvious problem if a tenant files a bankruptcy case on February 1 is not addressed in the Code.

[6] Acceptance of rent when no longer required because of the termination of a lease is generally considered to reinstate the lease. order M-311 continues, "ORDERED, that if the lessor does not respond within the 10 day deadline, the lessor shall be deemed to have consented to receive the check, [and not to object to the tenant's certification] and the Clerk shall send the check to the lessor at the address set forth in the debtor's certification."

In the case at bar, the landlord objected <u>only</u> to the debtor's second certification. That matter was duly scheduled for a hearing before Judge Glenn, who ordered a limited abstention (without using the word) to allow the State Court (*i.e.*, New York City Civil Court, the very court that entered the judgment by stipulation in the first place) to determine whether the compliance with §362(l) enabled the warrant to be vacated under New York law. Although the Debtor's position was that as a matter of bankruptcy law compliance with the BAPCPA entitled him to vacatur of the warrant, the matter was nevertheless referred, and the Civil Court, while denying vacatur of the warrant as of right (a conclusion with which the Debtor strongly disagrees), exercised its discretion to vacate the warrant on condition that the full amount of all pre-petition and post-petition rent, as well as the full amount of the judgment be paid, which it has been.

Therefore, it is clear that the Intervenor's contentions about the present state of the Civil Court proceedings and their effect on this appeal is incorrect, outmoded, and untenable. The Debtor, by incurring other obligations in the form of loans and advances towards future work, has obtained the security of being able to remain in his rent-stabilized apartment. Furthermore, it is obvious that the present appeal is not moot because the parameters of the stay that the Debtor has obtained in the new bankruptcy case are quite different from the parameters of the stay in effect when the former case was filed. The Debtor has been seriously compromised by the burden of substantial additional monetary obligations, all of which must be paid off in the context of his Chapter 13 Plan, creating an added burden in the construction (and modification) of his Chapter 13 Plan in his new bankruptcy case. Granting the appeal would substantially ease his burden and would also give the Court an opportunity to address what appears to be an issue of first impression—the effect of full compliance by a rent-regulated debtor with all the requirements of §362(l) of the BAPCPA. There are several reported decisions of debtors who have <u>attempted</u> so to comply and have failed one or more of the requirements, for varying reasons. In those cases, the results were uniform—the debtor was evicted, and under Chapter 13 the monetary portion of the judgment still had to be addressed in the Plan. There appears to be no precedent, however, for the situation

where a debtor has satisfied all the requirements of §362(l) and his landlord still objects to returning the debtor to his original condition.

Interestingly enough, Intervenor argues that the present appeal is now moot because the Debtor has had a stay as soon as he filed his new bankruptcy case. Judge Glenn, however, took the opposite view—that there was no automatic stay against the eviction process *ab initio*, and that it was therefore necessary to "reinstate" the stay when he ordered that the Debtor would be required to move in the State court to vacate the warrant of eviction that had already been issued by that clerk. Though it is not essential to the determination of the within appeal, it is the Debtor's position that his initial certification, filed simultaneously with the bankruptcy petition that constitutes the order of relief, was sufficient to suspend the operation of §362(b)(22), at least until an objection of a landlord might be sustained, and that therefore the full range of the automatic stay was in effect for at least the first 30 days after the new bankruptcy petition had been filed.

Even if this Debtor's financial position were such that the present appeal could be considered moot because of the lack of any further financial aggrievement, the within appeal should still be decided as an issue which is capable of repetition, though evading review. *See, e.g., Honig v. Doe*, 489 U.S. 305 (1998). This Debtor has been treated so unfairly by (1) having his reasonable request for an extension of time ignored, (2) having his case dismissed for failure to do what he had already done, and (3) being compelled to argue in State Court that should have been already determined under federal law, a consideration of the within appeal should be granted and the appeal allowed.

**CONCLUSION**

**THE DEBTOR'S APPEAL OF THE ORDER
DISMISSING HIS BANKRUPTCY CASE SHOULD
BE CONSOLIDATED WITH HIS APPEAL OF THE
ORDER REFUSING THE GRANT ANY EXTENSION
OF TIME IN WHICH TO FILE THE DOCUMENTS
REQUIRED UNDER CHAPTER 13 OF THE CODE,
BOTH APPEALS SHOULD BE GRANTED, AND
THE CASE SHOULD BE REMANDED TO THE
BANKRUPTCY COURT FOR CONTINUATION OF
THE CREDITORS' MEETING AND A
CONFIRMATION HEARING ON A MODIFIED
CHAPTER 13 PLAN.**

Respectfully submitted,

Dated: New York, New York
      August 23, 2008

/s/ Mayne Miller
MAYNE MILLER (MM-4106)
85 Worth Street, 5th Floor
Mail: P.O. Box 8050, G.P.O.
New York, NY 10116
(212) 966-1696
Attorney–Appellant

08/23/08, 23:15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In the Matter of

MAYNE MILLER,

                                        Debtor

Docket No. 08-cv-4306 (JGK)

DECLARATION OF SERVICE

MAYNE MILLER,

                                        Appellant,

            -against-

JEFFREY L. SAPIR, as Chapter 13 Trustee,

                                        Appellee

CHRISTINE COLE, a member of the bar of the United States District Court for the Southern District of New York, hereby declares pursuant to 28 U.S.C. § 1726 subject to the penalties of perjury that the following statements are true.

1. On July 22, 2008, I served the annexed Appellant's Brief upon Jeffrey L. Sapir, Mitofsky, Shapiro, Neville & Hazen, and Harvey J. Cavayero, attorneys for Trustee, 79 East Owner, LLC, and Irene Cargonja.

2. The service cited in paragraph 1 was accomplished by mail by true copies of said documents enclosed in sealed, post-paid wrappers in a depository within the State of New York under the exclusive care and control of the United States Postal Service.

3. The wrappers cited in paragraph 2 were addressed to said attorneys at 399 Knollwood Road, White Plains, NY 10603, 152 Madison Avenue, New York, NY 10016, and 57 Old Country Road, Westbury, NY 11590, the addresses respectively designated by them for service of papers.

Dated: New York, New York
        July 22, 2008

                                        _____
                                        CHRISTINE COLE
                                        11 Broadway, Suite 1101

afm/m p. 2 08-4305

New York, NY 10004
(212) 425-3158